**Emily BRIDGES et al., Appellants,**

**v.**

**Clarence BRIDGES, Appellee.**

**No. 6818.**

Court of Civil Appeals of Texas.

Beaumont.

May 19, 1966.

Rehearing Denied June 15, 1966.

Johns, Willard & Hannah, Beaumont, for appellants.

Tom Featherston, Port Arthur, D. F. Sanders, Beaumont, for appellee.

PARKER, Justice.

Plaintiff Clarence Bridges sued the defendants, Emily Bridges, Gladys Howard and Clifton Howard, Jr., for the title to and possession of various tracts of land, some of which he alleged to be his separate property and other tracts he alleged to be property of the community estate he equally owned with his divorced wife, Emily Bridges. He alleged fraud in order to cancel and annul certain instruments and, having done so, to recover title and possession to such tracts of land or, in the alternative, to recover such tracts of land upon the basis that community funds of Clarence Bridges and Emily Bridges were used in purchasing the property with the legal title thereto being vested in one or more of the defendants under the theory of constructive or resulting trust. Upon stipulation of the parties some of the tracts of land were disposed of in the judgment of the trial court. As to other tracts of land the controversy was resolved by final judgments in severed causes of action. Upon a jury verdict judgment was rendered on the "Smith Street property" restoring and vesting in Clarence Bridges and Emily Bridges, share and share alike, the title thereto. As to what is known as the "Kansas Street property" the title by the judgment was vested in Clarence Bridges as his sole and separate property. As to the Smith Street property, the court found that it was incapable of being partitioned and ordered that it be sold with the net proceeds of such sale divided equally between Clarence Bridges and Emily Bridges. It is only as to the judgment affecting the Smith Street and Kansas Street properties that the defendants have appealed.

In response to special issues, the jury found (1) that there existed a confidential relationship between Clarence Bridges and Emily Bridges in the payment of a note and indebtedness on the Smith Street and Kansas Street property; (2) that Clarence Bridges relied upon the said confidential relationship with Emily Bridges in the payment of the said note and indebtedness;

(3) that said reliance by Clarence Bridges was reasonable under all the attending circumstances; (4) that Emily Bridges fraudulently failed to make the payments on said note and indebtedness causing them to be overdue and foreclosed by deed of trust sale; (5) that Emily Bridges arranged with Gladys Howard and/or Clifton Howard, Jr. to purchase the Smith and Kansas Street properties for said Emily Bridges; (6) that Clarence Bridges did not know for a reasonable time before the foreclosure sale that the confidential relationship previously existing between him and Emily Bridges had ceased at the time the property on Smith and Kansas Streets were sold at the foreclosure sale to Clifton Howard and Gladys Howard; and (7) that Clarence Bridges, in the exercise of ordinary care, would not have known for a reasonable time before the foreclosure sale that the confidential relationship previously existing between him and Emily Bridges had ceased at the time the property on Smith and Kansas Streets were sold at the foreclosure sale to Clifton Howard and Gladys Howard.

The defendants in the trial court will be designated as appellants or by their proper names. The plaintiff in the trial court will be designated as appellee or by proper name.

Appellants' first three points of error are that there was no evidence of fraud on the part of appellants for which reason the trial court erred in overruling appellants' motion for a directed verdict, appellants' motion for judgment non obstante veredicto and in submitting special issues Nos. 4 and 5 to the jury. Appellants' first three points of error are "no evidence" points. The evidence favorable to the jury's findings will be considered in passing upon these points. The evidence bearing upon fraud is as follows:

Emily Bridges was married to Clifton Howard on October 24, 1929. They had two children, Clifton Howard, Jr., born in 1928, and Gladys Howard, born in 1941. Clifton Howard died intestate on January 10, 1946. Emily Bridges married Clarence

Bridges on October 25, 1947. To this marriage two children were born: Clarence Bridges, Jr., born in 1948, and Alice Bridges, born in 1951. They were divorced September 16, 1959. Emily Bridges had a high school education and attended college part of one year. She was employed by Jefferson County Water Control and Improvement District No. 11 in Port Arthur, Jefferson County, Texas. Among her duties was the issuance and signing of checks. She was secretary-treasurer and a director of said Board. Emily Bridges received the following amounts from Jefferson County Water Control and Improvement District No. 11:

| Feb. 9, 1959 | Director's Fee | $ 500.00 | |
|---|---|---|---|
| Feb. 11, 1959 | | 1,437.00 | ($1,080 rent; $207 repayment of loan; $150 car expenses) |
| Mar. 23, 1959 | Director's Fee | 100.00 | |
| Apr. 16, 1959 | " | 100.00 | |
| May 28, 1959 | " | 300.00 | |
| June 3, 1959 | " | 100.00 | |
| Dec. 9, 1959 | " | 35.00 | |
| Dec. 17, 1959 | " | 30.00 | |
| Dec. 18, 1959 | " | 600.00 | |
| | | $3,202.00 | |

All of such money was community property and in her possession and actual control together with $3,500.00 she received in March of 1958.

Clarence Bridges was uneducated, could not read, but could draw his name. He testified that his wife, Emily, handled all business matters, paid bills and installment payments on notes. Clarence Bridges authorized and relied upon his wife's attending to all business matters at all times pertinent to this action. Clarence Bridges was an employee of Gulf Refinery.

Admittedly, the Kansas Street property was originally a part of the separate estate of Clarence Bridges. On October 25, 1950 Clarence Bridges and wife, Emily, executed a deed of trust to R. L. Rutan, trustee, covering the Kansas Street property to further secure the payment of their vendor's lien note of even date in the amount of $4,450.00 payable to C. L. Lazenby and wife as part of the purchase price for the Smith Street property. This note and lien was transferred and assigned to Mary Skeff and subsequently acquired by Tom Moore Featherston. On April 21, 1959, Featherston transferred and assigned same to Clifton Howard, trustee for the Gladys Howard Trust. This trust agreement was prepared by Featherston, is dated April 2, 1959, and terminated when the beneficiary attained 21 years of age with title then vesting in Gladys Howard. $900.00 was placed in this trust by Clifton Howard.

In March of 1958 Emily Bridges sued Clarence Bridges for divorce, employing Featherston as her attorney. Clarence Bridges continued to live in their homestead on a 5 acre tract, continued to give her money to make the payments on the Lazenby and other notes, continued to allow her to collect the rents and to retain royalty on oil from a separate property. Nevertheless, Emily Bridges led him to believe that she had paid the notes on the community mortgages until after the deed of trust sales hereinafter mentioned. At the time Clifton Howard, as trustee, acquired the Lazenby note and liens he had no money. His mother, Emily Bridges, did have money, which was community property. The only source Clifton Howard had to obtain money was from his mother who admitted she had enough money to send those kids up there

(referring to Clifton Howard and Gladys Howard) $900.00, although not at one time. Clifton Howard stayed with his mother and his step-father, Clarence Bridges, immediately prior to Clifton Howard's placing said $900.00 in trust for his sister, Gladys Howard. Emily Bridges received $1,437.00 on February 11, 1959 from the Water Board. After the divorce suit was filed Emily Bridges admitted that she conferred with her children, Clifton Howard, Jr. and Gladys Howard, about the properties here involved, at which time she was really taking care of the notes. There is probative evidence that they agreed to acquire these properties and exclude Clarence Bridges from any interest therein. The holder of the notes which were allowed to become delinquent was Clifton Howard, Jr. as trustee for Gladys Howard. He appointed Featherston as substitute trustee for Rutan. All three, Emily Bridges, Clifton Howard, Jr. and Gladys Howard, knew of the trustee sale to come up. Emily Bridges did not advise Clarence Bridges of such planned foreclosure sales, although living in the same house with her. Featherston, as substitute trustee, sold the Kansas Street property at the trustee sale to Clifton Howard as trustee for the benefit of the Gladys Howard Trust for $50.00. The date of the trustee sale was July 7, 1959. The Smith Street property was community property of Clarence Bridges and wife, Emily Bridges. Likewise, on the Smith Street property, Featherston, as substitute trustee, at trustee sale on June 2, 1959, sold the Smith Street property to Clifton Howard as trustee for the benefit of the Gladys Howard Trust for the sum of $820.86.

■ The evidence justifies the conclusion that Emily Bridges with community funds in her possession deliberately violated her agreement with Clarence Bridges to pay the installments on the note given to the Lazenbys so that foreclosure sale under the deed of trust might be had. After the divorce suit was filed Clarence Bridges continued to live in the same house as his wife, Emily, together with his children by the marriage to Emily Bridges. This home was on a five acre tract as to which there is no argument. He was paying some $47.00 every two weeks to Emily Bridges for the support and maintenance of his children. Emily Bridges was collecting the rents from properties other than the homestead. To summarize, it appears that Emily Bridges and her children, Clifton Howard, Jr. and Gladys Howard, using money that belonged to the community estate of Clarence Bridges and wife, Emily Bridges, placed the legal title of property that originally belonged to Clarence Bridges or to Clarence and Emily Bridges in themselves or some of them. In the charge of the court "confidential relationship" was defined, and as part of the instruction to the jury with reference thereto, the court stated "the existence of a marital relation, standing alone, does not thereby carry a presumption of confidential relation." The jury found there was such a confidential relationship. With Emily Bridges occupying a position of trust, she took advantage of Clarence Bridges in their dealings, with the co-operation of Clifton Howard and Gladys Howard. There is probative evidence that Clarence Bridges was defrauded of his interest in these properties by Emily Bridges and her children by a former marriage, taking advantage of his trusting ignorance. The divorce decree was entered September 16, 1959, but there was no adjudication of property rights as between them. Appellants' points of error 1–3, both inclusive, are overruled.

■ Appellants' points 4 and 5 assert error of the trial court in admitting testimony as to prior property transactions between Emily Bridges and her deceased former husband, Clifton Howard, and as to the amount of attorney's fees received by Mr. Featherston for the reason that the transactions were unrelated. It seems that she had obtained a deed from Clifton Howard, Sr. to certain property in 1939. This deed was admitted for the limited purpose of showing her knowledge of property transactions and that she had a history of being

able to acquire property in her name. The attorney's fee received by Featherston was for representing the Water Board No. 11. As to the 1939 deed the point of error is overruled. As to the fees Featherston received from the Water Board, this evidence was harmless under Texas Rules of Civil Procedure, rule 434, and this point of error is overruled.

The judgment of the trial court is affirmed.